NATIONAL LABOR RELATIONS BOARD
v. CONLON BROS. MFG. CO.

No. 10293.

United States Court of Appeals
Seventh Circuit.

Feb. 19, 1951.

330

David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, Samuel M. Singer, Attorney, National Labor Relations Board, all of Washington, D. C., Ross M. Madden, Chicago, Ill., George J. Bott, General Counsel, Frederick U. Reel, Attorneys, National Labor Relations Board, Washington, D. C., for petitioner.

Samuel E. Hirsch, Jack A. Diamond, Chicago, Ill., for respondent.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This case comes to this Court on a petition of the National Labor Relations Board for the enforcement of its order issued against the respondent, Conlon Brothers Manufacturing Company, January 16, 1950. The respondent is an Illinois corporation engaged in the manufacture of washing machines. In June of 1948 the Washing Machine Workers' Union, hereinafter

called the Union, filed a petition with the National Labor Relations Board requesting the Board to certify the Union as the bargaining representative for a unit composed of all "production, maintenance and shop employees" at respondent's plant, excluding supervisors and office employees.

The respondent at a hearing before the Board objected to the plant-wide unit sought by the Union and insisted that the Board should establish three separate bargaining units, one for its "production employees," another for its "shop employees," and a third for its part-time workers. The Board found and held that a single unit consisting of all of respondent's employees, other than office and supervisory employees, would be appropriate for the purpose of collective bargaining.

The respondent admits that it refused to bargain with the representatives of the Union, but seeks to excuse itself on the grounds—(1) that the bargaining unit designated by the Board was not appropriate, and (2) that the election was improperly conducted.

We are not impressed with the contention of the respondent that the unit found and designated by the Board was not appropriate for bargaining purposes. The record indicates that at the time of the election there was a total of approximately 44 employees working for the respondent. Thirteen of these employees were students who were going to school and were only working a portion of the time which the other employees worked. The respondent designated the majority of its employees who actually assembled the machines and performed the manufacturing operations, as "production employees." The respondent classed as "shop employees" those employees who did janitor service or operated hand trucks, trucking material and supplies from one place to another in respondent's plant, and also placed in this class the "maintenance employee" who kept the various machines in condition to operate, and also did general repair work in the plant. The respondent insisted that there should be three separate bargaining units among its employees: production employees, shop employees and part-time employees. The

evidence indicates, however, that whenever the occasion demanded the production and shop employees were used interchangeably on whatever needed to be done to carry on respondent's work, and it was also indicated that while most of the part-time employees were engaged in the production work, one of the part-time employees was used most of the time as a shop employee.

It was shown that respondent's full-time employees are scheduled for eight hours a day, working from 8 a. m. until 4:30 p. m., with time out for lunch between 12 and 12:30 p. m. Some of the part-time employees worked from 8 o'clock in the morning until noon, while others worked from 1 o'clock, 1:15 or 2 o'clock until 4:30 p. m.

All of the employees are paid weekly on an hourly basis. The production employees are paid an hourly rate of from $1 to $1.25; the shop workers of from $1 to $1.05; the maintenance man a rate of $1.15 to $1.35; and the part-time workers a rate of from $.90 to $1.10 per hour.

Respondent's plant, in which all of its employees work, is located in a two-story building, the two stories being connected by an automatic elevator.

It was further shown that Rudolph P. Wolchina, the manager of respondent's plant, Tom Conlon, respondent's president, and Walter Conlon administer the policy with regard to the wages of all respondent's employees. Wolchina also testified that Galavan, respondent's superintendent, assigns the work, sees that everything is lined up and handles the complaints and grievances of all the employees.

█ Under the above facts we cannot disturb the decision made by the Board under the authority of Section 9(b) of the Labor Management Relations Act of 1947. That subsection provides that: "The Board shall decide in each case whether, in order to insure to employees the full benefit of their right to self-organization and to collective bargaining, and otherwise to effectuate the policies of sections 151–166 of this title, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." 29 U.S.C.A. § 159(b).

We cannot say that the action of the Board here in so designating the unit for bargaining purposes, under the facts shown above, was arbitrary, capricious or unreasonable.

On September 30, 1948, the Board ordered an election to be held within thirty days from that date. Pursuant to this direction of the Board, the Regional Director scheduled an election to be held at the plant of respondent for October 27, 1948, between the hours of 11:45 a. m. and 12:15 p. m. and between 1:00 p. m. and 1:30 p. m. On the date of the election the agent of the Board did not appear for the election until 12:30 p. m., and, because some of the part-time workers had then left the plant, he determined to hold the election on the following day during the same hours and at the same place "and so informed the parties." At the election held on the next day, October 28, forty-two of the approximately forty-four employees participated in the election. Two of the ballots were not counted, one ballot being void and the vote of one employee being challenged. Of the remaining forty ballots, twenty-one were cast for and nineteen against the Union. After the election representatives of the Regional Director, the respondent and the Union all certified to a tabulation of votes and also signed a written certificate which stated that the counting and tabulating were fairly and accurately done, that the secrecy of the ballots was maintained, that the results were as indicated by the tally and that "such balloting was fairly conducted, that all eligible voters were given an opportunity to vote their ballots in secrecy, and that the ballot box was protected in the interest of a fair and secret vote."

On November 4, 1948, the respondent not having filed any objection to the election within the five days allowed for such objections by the Board's rules and regulations, the Regional Director certified the Union as the exclusive bargaining representative of the employees.

On the sixth day the respondent complained of the election having been post-

poned from October 27, 1948, to October 28, 1948, "without due and proper advance notice thereof," and now contends that because of the lack of such notice the election was void.

The respondent argues that since some of the part-time workers had already left the plant when the election was so postponed, "if any one of them did not appear for work on October 28, 1948, he, of course, would not even know that an election had been held."

The only purpose of the notice of an election is to advise the employees of the fact that an election is to be held so that all may have an opportunity to vote. In the hearing before this Court counsel for the respondent admitted that if the parties had agreed to hold the election on a certain day and all employees had been present and had had an opportunity to vote, such an election would have been valid without any formal or written notice. It seems to us we have practically that situation here. The respondent had a small plant, with only forty-four employees, all working together in this one small space. We know that of the forty-four employees forty-two knew of the election because that number actually voted. The Board might reasonably assume that under the circumstances of this case the other two employees also knew of the election.

■ Whether the two employees who did not vote were actually working in the plant on October 27 after the election was postponed, or on October 28 before the election was concluded, was a fact which the respondent could easily have ascertained from its books and records. Respondent chose to throw no light on this fact which was particularly within its knowledge, and so can not now complain if there were a failure to prove actual notice to these two employees.

It is significant that after the election was held the respondent's representative joined with the representatives of the Board and the Union in the written certificate which stated "that such balloting was fairly conducted, that all eligible voters were given an opportunity to vote their ballots in secret * * *." This certificate is not consistent with the respondent's later claim that some of the employees were not notified of the election. It is difficult to understand why the respondent's representative would have signed such a certificate if the respondent had then been of the opinion that some of the employees had failed to vote because they had not known of the election.

■ Another fatal defect in the respondent's case is found in the fact that the respondent failed to file its objection to the election with the Regional Director within five days after the tally of the ballots had been furnished to the parties. The pertinent rule of the Board's Rules and Regulations (Sec. 203.61, 12 Fed.Reg. 5656, 13 Fed.Reg. 4873) provided that upon the conclusion of such an election the Regional Director shall cause a tally of the ballots to be furnished to the parties; that after such tally has been furnished any party may file objections "to the conduct of the election or conduct affecting the results of the election"; and that "All such objections shall be filed within 5 days after the tally of ballots has been furnished. * * *." The section further provided that if no objections are filed within the five day period the Regional Director shall "forthwith" issue to the parties a certification of the results of the election, including certification of representatives where appropriate.

The Labor Management Relations Act of 1947 expressly gives to the Board the authority to make such rules and regulations as may be necessary to carry out the provisions of the Act. 29 U.S.C.A. § 156.

■ It is our opinion that this rule fixing a maximum time of five days within which to file objections is not unreasonable. There is a representative of the employer and of the Union present at the election. If there were any irregularity in the conduct of the election these representatives would know it at once. It is important that an elected representative of the employees be promptly certified as such to the parties. This cannot be done until the time for making objections to the election

has expired. We can see no valid reason why such objections could not, and should not be made within the five day period.

For the reasons assigned above a decree ordering the enforcement of the Board's order will be entered.

It is so ordered.