SWING STAGING, INC. Swing Staging Bridging, Inc., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 92–1099.

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 1993.

Decided June 11, 1993.

Martin Gringer, Garden City, NY, argued the cause for petitioners.

David Seid, Atty., N.L.R.B., Washington, DC, argued the cause for respondent. With him on the brief was Charles Donnelly, Supervisory Atty., N.L.R.B., Aileen A. Armstrong and Jerry M. Hunter, Attorneys, N.L.R.B., Washington, DC.

Before: WALD, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Petitioners refused to bargain with an NLRB-certified labor representative. In defense to the ensuing Board charge that their refusal violated 29 U.S.C. §§ 158(a)(1) & (5), they contended that the Board's certification of the representative—made over their ob-

jections to the underlying representation election—was unlawful for a variety of reasons. We do not reach their detailed substantive arguments, for their procedural attack on the Board's certification decision requires a remand. The Board's rules call on it to hold an evidentiary hearing when a party objecting to an election proffers specific evidence making out a prima facie showing of objectionable conduct. If the proffer meets that standard, the Board is not free to dismiss the objections—as it did here—simply on the basis of ex parte communications that contradict the proffer. Because of the Board's reliance on such ex parte communications, it never assessed petitioners' request for a hearing under the proper standard. We remand for it to do so.

\* \* \*

Petitioners are two small, affiliated companies located across the street from each other in Long Island City, New York: Swing Staging, Inc. ("Swing"), which provides scaffolding equipment for building maintenance companies, and Swing Staging Bridging, Inc. ("Bridging"), which builds sidewalk protection structures for construction contractors. The employees of the two companies generally have no overlapping work functions. They interact informally a good deal, however, all punching a single time clock located at Swing, sharing a single parking area, and having the same break times.

In August 1990, representation elections were held among petitioners' workforces pursuant to agreements between petitioners and Local 282 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO. The elections produced union victories. Petitioners filed timely objections to the results in both elections.

After petitioners filed their objections, the NLRB's Regional Director received evidence, conducted some ex parte inquiries, and issued a report to the NLRB recommending that the objections be overruled without a hearing and that the Teamsters be certified as bargaining representative for each workforce. The NLRB adopted the Regional Director's findings and recommendations. *Swing Staging v. Local 282, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, Nos. 29–RC–7654 & 7662 (unpublished NLRB decision and certification of representative, March 4, 1991) ("*NLRB Certification*") at 2.

After petitioners refused to bargain with the union, the NLRB Regional Director issued a complaint alleging that petitioners had thereby violated 29 U.S.C. §§ 158(a)(1) & (5).[1] The companies defended on the ground that the Board had improperly dismissed their objections to the representation election, so that its certification of the union was in error. A proper investigation of their complaints, they said, would verify the need for new elections. By summary judgment the NLRB held the refusals to bargain to be violations of 29 U.S.C. §§ 158(a)(1) & (5). Petitioners here attack only the Board's certification decision, conceding that they violated the statute *if* the union was properly certified.

\* \* \*

 A party challenging a Board-run representation election bears the burden of showing that the results of such an election are invalid. See *NLRB v. Mattison Machine Works*, 365 U.S. 123, 124, 81 S.Ct. 434, 435, 5 L.Ed.2d 455 (1961). The objecting party must show not only that improper acts occurred, but also that those acts created such an environment of tension and coercion

---

1. Section 158 of Title 29 reads in relevant part:
 (a) It shall be an unfair labor practice for an employer—
 (1) to interfere with, restrain, or coerce employees in the exercise of the right guaranteed [by provisions of] this title;

 (5) to refuse to bargain collectively with the representatives of his employees, subject to . . .

[other provisions] of this title.

" 'as to have had a probable effect upon the employees' actions at the polls' " and to have " 'materially affected the results of the election.' " *Amalgamated Clothing Workers v. NLRB*, 424 F.2d 818, 827 (D.C.Cir.1970) (quoting *NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 30 (5th Cir.1969)).

■ When an objecting party raises substantial and material issues of fact sufficient to support a prima facie showing of objectionable conduct, the objector is entitled to an evidentiary hearing. See 29 CFR § 102.69(d); *NLRB v. Service American Corp.*, 841 F.2d 191, 195 (7th Cir.1988). The proffer cannot be conclusory but "must point to specific events and specific people." *Anchor Inns, Inc. v. NLRB*, 644 F.2d 292, 296 (3d Cir.1981); see also *NLRB v. Douglas County Electric Membership Corp.*, 358 F.2d 125, 130 (5th Cir.1966). If the proffer satisfies these requirements, the NLRB may not reject the evidence and sidestep the need for an evidentiary hearing on the basis of ex parte investigations. See *NLRB v. Howard Johnson Motor Lodge*, 705 F.2d 932, 934 (7th Cir.1983); *Anchor Inns, Inc.*, 644 F.2d at 296.

■ After the representation elections at Swing and Bridging, the petitioners each filed identical objections based on alleged incidents that they claimed affected the results. Those objections were (verbatim):

1. The Employer objects to the conduct of the Union and its agents in threatening an employee, on or about August 2, 1990, that his automobile would be damaged if he did not vote for the Union.

2. The Employer objects to the conduct of the Union and its agents in making threats to an employee that he would be physically harmed if he did not vote for the Union.

3. The Employer objects to the conduct of the Union and its agents in threatening an employee that the Union would make sure the employee lost his pension benefits previously vested if the employee voted against the Union.

4. The Employer objects to the conduct of the union and its agents in creating an atmosphere of tension and coercion among employees by engaging in such conduct as the placing of a hangman's noose on the car of the Employer's President, and by committing acts of sabotage on the Employer's equipment.[2]

■ As our discussion of the procedural requirements makes clear, the Board could throw out petitioners' objections only if it either (1) found that their allegations and evidence were insufficient to merit a hearing under its substantive criteria or (2) proceeded to a hearing in which it found the claims inadequately supported. On brief the Board asserts that it did the former—that "the Regional Director assumed as true the objections raised by the Companies, but found them insufficient to warrant overturning the election." NLRB Brief at 22 n. 5. This is simply not true. The Regional Director— whose findings and recommendations the Board adopted without change—explicitly relied on information obtained through ex parte investigations to deprecate the petitioners' factual allegations.

For example, as factual support for their first objection, the petitioners submitted an affidavit from John Pantanelli—president and sole shareholder of Swing and part owner of Bridging—in which he asserted that one of the employees (Cherba) told him that another (Rosado), had, in the presence of fellow workers, told Cherba that if he voted against the union he would "have to watch out for the windows of his car." When the Regional Director assessed the seriousness of this allegation, he did not take the assertions as fact, but instead stated that "[n]one of the nine other ... employees who were interviewed were [sic] aware of the incident." *Report of NLRB Regional Director on Objections* at 6–7. (The Regional Director never

---

**2.** Petitioners also advanced a fifth objection, which, like the four listed above, was overruled by the Regional Director and Board. Because petitioners made no specific mention of it in their brief or in their argument to this court, and because their procedural argument does not seem to apply (the Regional Director's treatment of this objection seems to have been proper), any objection to the Board's disposition of the objection has been waived. See *Corson and Gruman v. NLRB*, 899 F.2d 47, 50 n. 4 (D.C.Cir.1990).

stated who these nine employees were, nor whether they included those mentioned in the Pantanelli affidavit.) Relying in part on these ex parte sources, the Regional Director found the proffered evidence insufficient. See *id.* at 7.

The Regional Director used the same technique when addressing Pantanelli's assertion that a Swing employee (Perez) had told him (through Perez's uncle acting as interpreter) that persons "across the street" (evidently workers at Bridging) had threatened him with physical harm if he voted against the union. This the Regional Director discounted on the basis of ex parte interviews with Perez and eleven unnamed employees. See *Report of NLRB Regional Director on Objections* at 7. (The Report omits any indication of an interview with the uncle or with the employee who originally alerted Pantanelli to the threat to Perez. Also, although Pantanelli reported that Perez had explicitly declined to reveal the names of the persons threatening him, which might suggest fear of retaliation, the Regional Director's report makes no mention of any measures taken to offset such fears, or even recognition of their possible existence.)

While the Regional Director appears not to have relied on ex parte investigations in rejecting petitioners' third objection, he evidently did so for the fourth. That objection aggregated evidence of several incidents of property damage. .The Regional Director discounted this by saying that there was no evidence that any employee was aware of them; as that is contradicted by Pantanelli's statement that he specifically asked employees about the incidents, the Regional Director either failed to analyze the evidence carefully or relied on ex parte communications to reject petitioners' proffer.

■ Besides relying on ex parte communications, the Regional Director failed to assess the cumulative impact of the alleged episodes. The Board is required to make an "overall judgment as to whether the atmosphere in the plant ... was so poisoned" as to materially impair the election results. *Amalgamated Clothing and Textile Workers v. NLRB,* 736 F.2d 1559, 1569 (D.C.Cir.1984). Instead, the Regional Director analyzed each objection solely in isolation. See *Report of NLRB Regional Director on Objections* at 5–12.

As the evaluation of election misconduct is for the Board, not us, *Amalgamated Clothing and Textile Workers,* 736 F.2d at 1563, we could affirm only if it were clear that the Board would certify the unions if it observed the correct procedure and method of analysis. We cannot here find that to be the case. Although the Board cites several cases in which it found that conduct arguably similar to each of the episodes alleged by petitioners was inconsequential, it pointed to no examples of such a finding where there was such a combination of objections. The elections in this case were close—6–3 for the union at Bridging (with one abstention), and 11–5 at Swing (with one challenged ballot)—and the Pantanelli affidavit puts in question the votes of at least five specific employees. The NLRB Regional Director and Board did not indicate at which firm each of the likely affected employees worked, having dealt with the petitioners' objections collectively. See *Report of NLRB Regional Director on Objections* at 1 n. 1; *NLRB Certification* at 1 n. 1. Thus we cannot find the errors harmless.

\* \* \*

Because the unfair labor practice finding can be valid only if the underlying election certification was valid, we remand the case to the Board for it to assess petitioners' evidence of election misconduct under the proper procedures and standards.

*So ordered.*