# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3648

_____

National Labor Relations Board,      *
                                     *
        Petitioner,                  *
                                     *   Appeal from the National
    v.                               *   Labor Relations Board.
                                     *
Superior of Missouri, Inc.,          *
                                     *
        Respondent.                  *

_____

Submitted:  April 14, 2000

Filed:   November 7, 2000

_____

Before McMILLIAN, FAGG, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

The National Labor Relations Board petitions to enforce its order compelling Superior of Missouri, Inc., to bargain with Teamsters Local Union No. 682. Superior defends its refusal to bargain on the ground that the Union was improperly certified after a representation election marred by Board and Union misconduct. Superior urges us to revoke the Union's certification and order a new election, or, alternatively, to order the board to conduct a hearing on Superior's objections to the conduct of the election. Concluding that Superior produced sufficient evidence to warrant a hearing, we deny enforcement and remand to the Board.

# I. Background

The Union petitioned the Board seeking certification as the exclusive collective bargaining representative of the sixty-nine truck drivers and helpers employed at Superior's Creve Coeur Mill Road facility in St. Louis. See 29 U.S.C. § 159(c). The Union and Superior agreed to hold a contested representation election at the facility on Friday, June 19, 1998, between 6:00 and 8:00 a.m. The Board approved that agreement and scheduled the election.

On the morning of June 19, the bargaining-unit employees assembled at the facility before 6:00 a.m. to vote, but the Board agent assigned to oversee the election overslept. Most Superior drivers start their waste-hauling routes before 6:15 a.m., and many do not start from the facility. As 6:00 came and went, the employees' initial impatience turned to dissatisfaction and anger, because the delay promised to prolong their Friday work day. Ken McAfee, Superior's General Manager, held the drivers at the facility until 6:45 a.m. Then, having heard nothing from the Board agent, McAfee released them to begin their routes. Five minutes later, the Board agent telephoned the facility. McAfee advised that the employees had left to start their routes. The Board agent asked whether they could be called back to vote. McAfee said that was not possible. The Board agent "made a comment to the effect that you cannot trust alarm clocks," and the conversation ended.

The Board unilaterally rescheduled the election for the following Friday, June 26, and the Board agent delivered new election notices that did not explain why he had failed to appear on June 19. Before the June 26 election, Superior distributed a letter apologizing to employees for any inconvenience caused by the botched June 19 election, stating the company was not at fault, and urging employees to vote in the rescheduled election. The employees were never told why the Board agent had failed to show up for the first election.

The rescheduled election was held on June 26. The employees voted 41-20 in favor of the Union. Superior filed timely objections with the Board's Regional Director. See 29 C.F.R. § 102.69. Superior alleged that the election should be set aside because of the Board agent's conduct on June 19, because the Board unilaterally rescheduled the election, and because a Union representative improperly offered to waive union initiation fees for employees who voted for the Union. Superior submitted sworn affidavits from both bargaining unit and non-unit employees supporting its allegations. The Regional Director investigated informally, without holding a hearing, and then issued a report recommending that the Board overrule Superior's objections and certify the Union. Superior filed exceptions, urging the Board to set aside the election or to order a hearing on Superior's objections. The Board adopted the Regional Director's report and certified the Union. See Superior of Missouri, Inc., 327 N.L.R.B. No. 53, 1998 WL 850415 (Nov. 30, 1998).

A certification order is not appealable, so an employer may obtain judicial review only by refusing to bargain with the union and then asserting its election objections as defenses to the ensuing unfair labor practice charge. See Boire v. Greyhound Corp., 376 U.S. 473, 477 (1964); 29 U.S.C. § 159(d). Superior followed that procedure here, refusing to bargain with Local 682 and then defending the General Counsel's unfair labor practice charge by attacking the validity of the representation election. The Board granted the General Counsel's motion for summary judgment, declining to reexamine its certification decision and holding that Superior's refusal to bargain with a certified union violated 29 U.S.C. §§ 158(a)(1) and (5). See Superior of Missouri, Inc., 327 N.L.R.B. No. 197, 1999 WL 195531 (Mar. 31, 1999). The Board now petitions this court to enforce its order to bargain.

## II. Standard of Review

In opposing enforcement, Superior argues that we should either set aside the election or remand for a hearing on its objections. We consider only the latter issue.

The Board's Regional Director must investigate a party's timely objections to a representation election. As we have frequently explained, 29 C.F.R. § 102.69(d) requires that the Regional Director order an evidentiary hearing "if the objecting party makes a prima facie showing of substantial and material facts which, if true, warrant setting aside the election." Rosewood Care Ctr. of Joliet, Inc. v. NLRB, 83 F.3d 1028, 1031 (8th Cir. 1996); see NLRB v. Monark Boat Co., 713 F.2d 355, 356 (8th Cir. 1983); Beaird-Poulan Div., Emerson Elec. Co. v. NLRB, 571 F.2d 432, 434 (8th Cir. 1978). To warrant a hearing, the objecting party must state specific objections supported by an offer of proof. If the objector satisfies that burden and raises substantial and material issues of fact, the Board "may not reject the evidence and sidestep the need for an evidentiary hearing on the basis of ex parte investigations." Swing Staging, Inc. v. NLRB, 994 F.2d 859, 862 (D.C. Cir. 1993). We review the Board's decision not to hold a hearing *de novo*. See Overnite Transp. Co. v. NLRB, 105 F.3d 1241, 1245 (8th Cir. 1997).

## III. The Board Agent's Conduct and the Rescheduled Election

Superior objected that the Board agent's failure to attend the scheduled June 19 election "destroyed the laboratory conditions required by the Board for the conduct of its elections" and gave rise to anti-employer prejudice that may have affected the outcome of the rescheduled election. In support of these contentions, Superior submitted sworn affidavits by several employees. General Manager Ken McAfee recounted what happened on the morning of June 19, averring that the employees became noticeably upset and appeared to blame Superior when they could not start work on time because the Board agent failed to appear. Debbie Crosson (a non-bargaining unit employee) averred that one driver told her a rumor had spread among the bargaining unit employees prior to June 26 that "the Company had paid the Labor Board off so they would not show up on June 19 to hold the election." The driver, Melissa Seay, told Crosson that "several drivers" who had planned to vote against the Union voted for the Union on June 26 because they blamed Superior for holding them

-4-

at the facility on June 19. Similarly, driver Kevin Calcagno averred that he had heard a rumor "from more than one person" that Superior "never called the federal government to show up so we could vote in the election."

Without holding a hearing, the Regional Director recommended that these objections be overruled because "the parties agreed to reschedule the election to June 26," Superior distributed a letter denying responsibility for what happened on June 19, and employees "were well aware of the reason the election had to be rescheduled." The first reason is an error of fact -- it is undisputed that the Board unilaterally rescheduled the meeting to June 26.[1] The third reason is without factual support in this record and is contradicted by Superior's affidavits. The second reason is an apparent attempt to bring this case within the authority of Alladin Plastics, Inc.,182 N.L.R.B. 64 (1970). In Alladin, as in this case, a Board agent missed an election and rescheduled it for a few days later, and rumors flew that the employer had paid off the Board. The Board overruled the employer's objections, but on very different facts:

> The Employer had ample opportunity to reply to the rumor and, in fact, did so repeatedly. There was no claim that the [Union] originated, authorized, or approved the circulation of the rumor. On the contrary, the [Union] gave prompt and wide dissemination of a bulletin to all employees wherein it was prominently stated that the Employer, as well as the [Union], was not responsible for the election's delay. . . . Therefore, as both parties took vigorous and forthright measures to inform employees as to the true reason for the election's postponement, we cannot find the existence of the rumor sufficiently prejudicial to justify sustaining the objection.

---

[1]Indeed, the Board's published casehandling manual now cites this case as authority for the proposition that "[t]he Regional Director may unilaterally set the date of a rescheduled or cancelled election." NLRB Casehandling Manual § 11084.3.

Id. at 64. By contrast, in this case the Union made no effort to advise employees of the Board agent's mistake. Without a hearing, we cannot know whether Union organizers or supporters helped fuel the rumor to Superior's disadvantage. Thus, the Regional Director's reasons for not holding a hearing are unpersuasive.

On appeal, the Board adopted the Regional Director's recommendation to overrule these objections without a hearing. The Board first ruled that the Regional Director has discretion to unilaterally reschedule an election, citing only Alladin, a case that did not discuss the issue. The Board then rejected the objections on the merits because "there is no evidence that the [Union] was the source of the alleged rumor, and [Superior] had the opportunity to respond to it." This reasoning, too, is unpersuasive.

"During a representation election the Board must provide a laboratory in which an experiment may be conducted, under conditions as nearly ideal as possible, to determine the uninhibited desires of the employees." Monark Boat, 713 F.2d at 357 (quotation omitted). Here, the Board agent's blunder seriously disrupted the laboratory conditions, and a rumor spread that Superior had corrupted the Board's neutrality. The Regional Director then unilaterally rescheduled the election without attempting to measure the impact of his agent's blunder, and without consulting the parties -- who had carefully negotiated the election day and time -- about the appropriateness and convenience of the new date and time.[2] The Board agent did not alert employees that

---

[2]Because consent elections are "conducted under the direction and supervision of the regional director," 29 C.F.R. § 102.62(a), we agree that the Regional Director has discretion to reschedule a cancelled election. However, the Board's manual states that election "date, place, and hours are ordinarily based upon the parties' voluntary meeting of the minds . . . ." NLRB Casehandling Manual § 11302. Therefore, when a Board agent's blunder frustrates an agreed date, place, and time, it is a dubious exercise of discretion to reschedule the election without consulting the parties, and that arbitrary action makes it more likely the rescheduled election will need to be set aside if the rescheduling has interfered with the election's fairness.

he had blundered, nor did he inquire whether there was any need to do so. The Union made no attempt to explain the situation to employees, raising the distinct possibility that it had fueled the prejudicial rumor, or at least willingly took advantage of its prejudicial impact on Superior in the hotly contested election. When these facts are combined with employee affidavits stating that some number of bargaining unit employees changed their vote because of the June 19 incident, we conclude the Board was required to hold an evidentiary hearing on these issues.

In seeking enforcement, the Board argues that Superior's affidavits do not warrant setting aside the election because the essential question is whether employees were disenfranchised by the Board agent's conduct. In a case of this nature, we disagree. Whether employees were disenfranchised is the principal focus when a Board agent's alleged misconduct resulted in a shortened voting period, as in Jim Kraut Chevrolet, Inc., 240 N.L.R.B. 460 (1979), and Wolverine Dispatch, Inc., 321 N.L.R.B. 796 (1996). But here, the issue is whether the Board agent's blunder destroyed the election's neutral conditions by prejudicing voters against the employer. The Board recognized in Kerona Plastics Extrusion Co., 196 N.L.R.B. 1120 (1972), that affecting the outcome of an election in this manner is grounds for ordering a new election. We cited Kerona Plastics for that principle in Rosewood, 83 F.3d at 1032, and in Nabisco, Inc. v. NLRB, 738 F.2d 955, 958 (8th Cir. 1984). Thus, it is the law of this circuit.

In these circumstances, we conclude that Superior is entitled to a hearing on its objections that were based upon the Board agent's June 19 blunder and the impact of that incident on the June 26 election. Superior has made a prima facie showing of objectionable conduct that may have affected the outcome of the election and has raised fact issues requiring a hearing to resolve.[3]

---

[3]The Board argues it is contrary to Board policy to conduct a hearing on the "subjective" question whether particular employees changed their votes because of the rumor. See, e.g., Worth Stores Corp., 281 N.L.R.B. 1191, 1193 n.6 (1986). But we

## IV. The Initiation-Fee Waiver Issue

Superior's remaining objection is based upon its allegation that Tim Ryan, a Union organizer, "represented to employees that employees who voted 'yes' in the election would have their initiation fee waived but that those who voted 'no' would not." If true, Ryan's statement was election misconduct:

> [T]he crucial distinction in determining whether a proposed waiver of initiation fees is a permissible union tactic is between waiver offers made across the-board to all employees regardless of pre-election union support, and waiver offers made only to those employees who manifest pre-election union support or who voted for the Union. The former offers are permissible, the latter are not.

NLRB v. VSA, Inc., 24 F.3d 588, 594 (4th Cir.), cert. denied, 513 U.S. 1041 (1994), construing NLRB v. Savair Mfg. Co., 414 U.S. 270 (1973).

In support of this allegation, Superior submitted two driver affidavits. Kevin Calcagno averred that he and Sean Sontag met Ryan and "several other drivers" at a bar on or about June 5. Ryan told Calcagno that if he voted for the union his initiation fees would be waived. Calcagno further averred that he met Ryan "[l]ater the following week" with "other drivers and helpers." At this second encounter, when asked by driver Mike Uhlman how the Union would know who voted for it in a secret election, Ryan replied, "everyone who votes would have their initiation fee waived if the Union won." Driver Sean Sontag's affidavit set forth a slightly different but generally consistent account of these events. Sontag recalled that he, not Uhlman,

---

do not require that the Board make such an inquiry instead of adopting, for example, its approach in Kerona Plastics, where it ordered a new election after concluding, "It is impossible here to determine whether the [Board agent's] irregularity affected the outcome of the election." 196 N.L.R.B. at 1120.

asked Ryan at the second meeting to clarify his earlier statement about the fee waiver, and that Calcagno was not at the second meeting. Sontag further averred that he did not know whether Calcagno told other employees about Ryan's initial statement.

To investigate this objection, the Regional Director interviewed "[s]everal other employees eligible to vote in the election." Reciting that these employees "were advised that if the [Union] won the election, initiation fees would be waived for all employees," the Regional Director concluded that, even if Ryan "made the statement attributed to him by [Calcagno and Sontag], Ryan effectively corrected such alleged statement prior to the election." Accordingly, the Regional Director recommended that this objection be overruled without a hearing.

We are unpersuaded by the Regional Director's reasons for not conducting a hearing. The Sontag and Calcagno affidavits are prima facie evidence that Union representative Ryan initially made an improper fee-waiver offer that warrants setting aside the election. See Millard Processing Servs., Inc. v. NLRB, 2 F.3d 258, 261 (8th Cir. 1993), cert. denied, 510 U.S. 1092 (1994) ("the Board will overturn the election when [union] conduct reasonably tended to interfere with the employees' free and uncoerced choice in the election"). Both Sontag and Calcagno averred that they later heard Ryan "clarify" his offer in a way that would have eliminated the impropriety. Thus, Superior's evidence raises fact-intensive issues. If other employees heard Ryan's initial improper offer, as Calcagno averred, were all employees who heard the improper offer (or had it related to them by someone who heard it) present to hear Ryan's clarification? The Regional Director's *ex parte* interviews suggest that many employees were aware only of Ryan's proper offer. But the Board may not rely on *ex parte* inquiries to resolve substantial, material issues of fact. See Beaird-Poulan, 571 F.2d at 434; Swing Staging, 944 F.2d at 862. To be legally effective, a purported disavowal must be timely and must provide "adequate publication of the repudiation" to all affected employees. Passavant Mem. Area Hosp., 237 N.L.R.B. 138-39 (1978). A hearing is needed to resolve these issues. See Rosewood, 83 F.3d at 1031.

-9-

In adopting the Regional Director's recommendation to overrule this objection, the Board assumed the truth of Superior's allegations but concluded that no reasonable employee would be coerced by this improper offer because employees knew the Union "will never be able to determine" who voted for it in a secret election, an assertion based upon dicta in Molded Accoustical Prods., Inc. v. NLRB, 815 F.2d 934, 938-39 (3d Cir.), cert. denied, 484 U.S. 925 (1987). The assertion is one of fact -- it may or may not be true that a particular group of employees (i) knows that an upcoming election will be by secret ballot, and (ii) believes that the union will not have access to the secret ballots when and if it is certified. That a Union organizer would promise a fee waiver to those who vote for the Union (assuming Ryan made such a promise) suggests that he believed it would influence bargaining unit employees. Accordingly, we conclude that a hearing is necessary to resolve the issues raised by this objection.

The Board erred in overruling Superior's three objections and certifying Local 682 without a hearing. The Board's unfair labor practice decision was based upon this invalid certification. Accordingly, we deny the Board's petition for enforcement. We remand the case to the Board for an evidentiary hearing, or for such other proceedings not inconsistent with this opinion as the Board may deem appropriate.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent.

The majority distinguishes the present case from Alladin Plastics, Inc., 182 NLRB 64 (1970) (Alladin), on the ground that the Union made no effort to dispel the rumors regarding Superior's role in the failure of the election to take place as scheduled. I believe that the facts of the present case and Alladin are sufficiently analogous to render Alladin controlling. Not only did Superior have ample time to reply to the rumors and, in fact, did so by disseminating a letter to employees, but also there is no suggestion that the Union was responsible for the rumors. Under such circumstances,

the existence of the rumors was not sufficiently prejudicial to justify sustaining Superior's objection to the conduct of the election.

I also respectfully disagree with the majority's conclusion that the alleged statements of Union organizer, Tim Ryan, if true, are an unlawful fee-waiver offer which warrants setting aside the results of the election. Assuming, arguendo, that Ryan made the statements attributed to him by the employee witnesses, these employees further stated that Ryan unequivocally sought to clarify his statements by telling the witnesses that all employees who voted would have their initiation fees waived. Under such circumstances, the Union met its obligation to dispel any confusion because Ryan's elucidation was timely, unambiguous, and specific. See Regency Electronics, Inc. v. NLRB, 523 F.2d 522, 525 (7th Cir. 1975).

I agree with the majority that the Regional Director's reliance on "the parties' [agreement] to reschedule the election to June 26" was a clear error of fact because the Regional Director unilaterally rescheduled the election. The majority also acknowledges that the Regional Director has discretion to reschedule a cancelled election; however, it suggests that, under the circumstances of this case, doing so was "a dubious exercise of discretion." Slip op. at 7, n.2.

Superior alleges that rescheduling the election deprived it of the right to campaign and that the rescheduling itself caused prejudice and destroyed the laboratory conditions necessary for conducting a fair election. The majority holds that Superior is entitled to a hearing on at least the latter of these issues. I respectfully disagree. Superior does not suggest that it objected to the rescheduling before the election was conducted, nor does it articulate specific reasons why the new date created prejudice or prevented it from campaigning. In fact, Superior demonstrated that it had adequate time to campaign by sending a letter to its employees on June 22, 1998, in which letter it addressed the delay.

-11-

Superior generally asserts that the rescheduling disenfranchised employees who were absent or on vacation, although it "presented no specific allegation that any employee was unaware of the rescheduled time and place of the election or that the election was rescheduled at such a time as to render it difficult or impossible for anyone to vote." Alladin, 182 NLRB at 64, citing NLRB v. Conlon Bros. Mfg. Co., 187 F.2d 329 (7th Cir. 1951). Significantly, sixty-one of sixty-nine employees in the unit managed to vote. Even if the eight employees who did not vote suffered hardship, that is not a sufficient reason to set aside an election. See NLRB v. Sonoma Vineyards, Inc., 727 F.2d 860, 864 (9th Cir. 1984). Finally, I note that, even if all of the non-voting employees cast ballots against representation by the Union, the results of the election would still have favored Union representation. See Alladin, 182 NLRB at 64. In sum, I would hold that the objections raised by Superior do not raise substantial and material issues of fact as to the validity of the election. I would, therefore, hold that Superior was not entitled to an evidentiary hearing on its objections, and I would affirm the decision of the Board finding that certification of representation should issue.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.