**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0574n.06
Filed: July 7, 2005

No. 04-1910

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | **ON PETITION FOR** |
| | ) | **ENFORCEMENT** OF AN |
| INTERNATIONAL CHEMICAL | ) | ORDER OF THE NATIONAL |
| WORKERS UNION COUNCIL, | ) | LABOR RELATIONS BOARD |
| | ) | |
| Intervenor, | ) | |
| | ) | **O P I N I O N** |
| v. | ) | |
| | ) | |
| APL LOGISTICS, INC., | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**Before: MOORE and COOK, Circuit Judges, and GWIN,*** **District Judge.**

**KAREN NELSON MOORE, Circuit Judge.** This case involves a challenge to the validity

of a union election. The National Labor Relations Board (the "Board") petitions for enforcement

of its order requiring Respondent APL Logistics, Inc. ("APL") to cease and desist from refusing to

---

*The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

bargain with Intervenor/Charging Party International Chemical Workers Union Council of the United Food and Commercial Workers (the "Union"). We **ENFORCE** the Board's order.[1]

## I. BACKGROUND

A number of facts are not in dispute. On July 3, 2003, the Union filed a petition to represent warehouse employees at APL's facility in Shepherdsville, Kentucky. The Union and APL agreed to hold a union election on August 14, 2003, to take place in two separate time slots: the first from 6:30 a.m. to 8:00 a.m., and the second from 3:00 p.m. to 4:00 p.m. As the Board agent arrived late, the election did not actually begin until 7:10 a.m, forty minutes later than scheduled. All sixty-seven eligible employees voted. The Union won the election by a single vote, with thirty-four votes cast for the Union and thirty-three votes cast against the Union.

APL filed seven objections to the conduct of the election. The Board's Acting Regional Director ordered that an evidentiary hearing be conducted on APL's objection involving alleged threats against APL employees, but recommended that all other objections be overruled. The hearing was conducted on September 23, 2003. Following the hearing, the hearing officer recommended that APL's objection involving alleged threats also be overruled. On January 7, 2004, the Board adopted the hearing officer's recommendation that the objection involving alleged threats be overruled, and the Acting Regional Director's recommendation that all other objections be

---

[1]After proof briefs were filed, Respondent APL Logistics, Inc. ("APL") filed a motion to strike certain portions of the brief filed by Intervenor/Charging Party International Chemical Workers Union Council of the United Food and Commercial Workers (the "Union"). Insofar as the motion requests that the Union's statement of facts be struck for failing to include sufficient citations to the record, the motion is **DENIED**. Insofar as the motion requests that references to documents attached to the Union's motion to re-open the hearing be struck from the record, the motion is **DENIED AS MOOT**, as we have not found it necessary to consider those documents and are not remanding the case for a new hearing.

overruled. The Board certified the Union as the "exclusive collective-bargaining representative" of the relevant employees. Joint Appendix ("J.A.") at 769 (Decision and Certification of Representative). APL then refused to bargain with the Union, and the Union brought a charge with the Board on February 24, 2004, and an amended charge on March 17, 2004. On May 24, 2004, the Board found that APL "has engaged in unfair labor practices affecting commerce" and ordered APL "to cease and desist [in refusing to bargain with the Union], to bargain on request with the Union, and, if an understanding is reached, to embody the understanding in a signed agreement." J.A. at 888 (May 24, 2004 NLRB Decision and Order). The Board later applied to our court for enforcement of its May 24, 2004 order.

## II. ANALYSIS

### A. Jurisdiction

The Board had jurisdiction over the Union's refusal-to-bargain charge pursuant to 29 U.S.C. § 160(a). We have jurisdiction over the Board's application for enforcement pursuant to 29 U.S.C. § 160(e).

### B. Application for Enforcement

APL argues that the Board's order should not be enforced because allegedly the Board abused its discretion in four ways: (1) in failing to conclude that the opening of the polls forty minutes late invalidated the election; (2) even if the Board could not conclude that the opening of the polls forty minutes late invalidated the election, in failing to hold an evidentiary hearing on this issue; (3) in failing to consider the cumulative effect of all of APL's objections; and (4) in failing to conclude that the Union improperly threatened APL employees to coerce them to vote for the Union.

3

We review the Board's findings of fact, and its application of law to fact, for substantial evidence on the record as a whole. 29 U.S.C. § 160(e); *Mt. Clemens Gen. Hosp. v. NLRB*, 328 F.3d 837, 845 (6th Cir. 2003); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-91 (1951) (setting out substantial-evidence standard). Under this deferential standard of review, we conclude that APL's arguments lack merit.

**1. The Late Opening of the Polls**

APL's primary argument is that the election must be set aside based on the late opening of the polls. We disagree. Late opening of the polls is not sufficient to set aside an election. *Midwest Canvas Corp.*, 326 NLRB 58, 58 (1998). Nonetheless, if one of three additional factors are present, the Board may judge it appropriate to set aside an election where the polls did not open as scheduled: "(1) the votes of those possibly excluded could have been determinative; (2) the record also showed accompanying circumstances that suggested that the vote may have been affected by the Board agent's late opening or early closing of the polls; or (3) it was impossible to determine whether such irregularity affected the outcome of the election." *Id.* (quotations and footnotes omitted).

As no eligible voter was excluded, APL essentially concedes that the first *Midwest Canvas* factor is not relevant. As to the second factor, APL relies on *NLRB v. Superior of Missouri, Inc.*, 233 F.3d 547 (8th Cir. 2000), to argue that the vote in this case may have been affected by the late opening of the polls. In *Superior of Missouri,* there was evidence suggesting substantial employee anger at the company as a result of a postponed election, as well as rumors that the company had bribed the Board agent not to show up. By contrast, in the present case no evidence suggested employee anger or suspicion as a result of the Board agent's late arrival. The fact that third-shift

employees were forced to vote ten minutes after their shifts had expired is insignificant. There is no evidence in the record that these employees were either specifically aware that they would not be paid for this time, or angry that they would not be compensated for the ten minutes in question.

APL's remaining arguments, citing *Pea Ridge Iron Ore Co.*, 335 NLRB 161 (2001); *Nyack Hospital*, 238 NLRB 257 (1978); *B&B Better Baked Foods, Inc.*, 208 NLRB 493 (1974); *Kerona Plastics Extrusion Co.*, 196 NLRB 1120 (1972), are best analyzed as relying on some combination of the second and third *Midwest Canvas* factors. However, these precedents do not carry the weight APL would like them to bear. Although these decisions might be sufficient to support a Board finding in APL's favor, they are insufficient to permit us to reverse the Board's decision against APL. Some do have language arguably supporting APL's point, *see, e.g., Pea Ridge*, 335 NLRB at 161; *Nyack Hospital*, 238 NLRB at 260; *B&B Better Baked Foods*, 208 NLRB at 493; *Kerona Plastics*, 196 NLRB at 1120, but each is also clearly distinguishable.

In *Pea Ridge*, *B&B Better Baked Foods*, and *Nyack Hospital*, a sufficient number of voters were potentially disenfranchised to permit invalidation of the election under the first *Midwest Canvas* factor. *See Pea Ridge*, 335 NLRB at 161; *Nyack Hospital*, 238 NLRB at 260; *B&B Better Baked Foods*, 208 NLRB at 493. APL does correctly argue that in *Nyack Hospital*, the Board required a new election in the unit of office clerical employees (one of three employee units at issue in the case), despite the fact that the employees possibly precluded from voting were not sufficient in number to determine the results of that election. *See Nyack Hospital*, 238 NLRB at 260 n.22. However, as this decision could have resulted from the Board's desire to take the same action with respect to all three units of hospital employees, the Board's decision not to invalidate the present election under *Nyack Hospital* survives substantial-evidence review. Similarly, *Kerona Plastics*

5

provides APL with some support, as it clearly appears to be an invalidation under what is now the third *Midwest Canvas* factor. Nonetheless, *Kerona Plastics* can also be distinguished, as *Kerona Plastics* involved an early closing rather than a late opening of the elections, under circumstances that may have, as the employer argued, given "rise to rumors that the Board agent favored the Employer . . . [and] affected votes cast in the afternoon session." *Kerona Plastics*, 196 NLRB at 1120. In light of these precedents, the Board's decision not to set aside the election based on the late opening of the polls survives substantial-evidence review.[2]

### 2. Alleged Improper Union Threats Against APL Employees

APL contends that the Board erred in declining to overturn the election on grounds of improper Union threats against APL employees. However, the Board's decision not to set aside the election on this ground rested primarily on credibility determinations made by its hearing officer. *See* J.A. at 769 n. 3 (noting that two of the three participating Board members relied, in adopting the hearing officer's conclusion, solely on the hearing officer's finding that the "none of the alleged objectionable conduct occurred," rather than the hearing officer's alternative conclusion that even

---

[2]APL also argues that Petitioner National Labor Relations Board (the "Board") abused its discretion in declining to grant an evidentiary hearing on the election's delayed start. *See, e.g.*, *Colquest Energy, Inc. v. NLRB*, 965 F.2d 116, 119 (6th Cir. 1992). However, the only evidence APL put forward on this issue was that, due to the late opening of the elections, "[e]verything and everybody (the Company, the Union and the employees) was very confused about the disruption over the election and the uncertainty whether the election would be conducted." Joint Appendix ("J.A.") at 35 (Gillson Affidavit). As the Acting Regional Director accepted this statement as true in making his recommendation to the Board, APL has not established any issue of material fact. Accordingly, the Board did not abuse its discretion in declining to schedule an evidentiary hearing.

if the conduct did occur, it would not be objectionable).[3]  Therefore, our review of the Board's decision is highly deferential.  *See Mt. Clemens*, 328 F.3d at 844.[4]

APL argues that there was not substantial evidence on the record as a whole for the hearing officer's findings that three specific threats were *not* made:  (1) the alleged threat by Jeannine Belt ("Belt") to have Randolph Scott ("Mr. Scott") fired; (2) the alleged threat by Michelle Gehm ("Gehm") against Randall Akridge ("Akridge"); (3) the alleged threats by Belt against Kimberly Esterday ("Esterday").  However, APL does not seriously argue that there was no evidence to support the hearing officer's findings.  Rather, APL argues that it was "simply contrary to good sense," *Krispy Kreme Doughnut Corp. v. NLRB*, 732 F.2d 1288, 1293 (6th Cir. 1984), for the hearing officer to credit Gehm and Belt rather than Mr. Scott, Rebecca Scott ("Mrs. Scott"), Akridge, and Esterday.

APL simply does not present sufficient reasons to allow us to overturn the hearing officer's findings on substantial-evidence review.  In regard to the alleged threat by Belt against Mr. Scott, Gehm stated that she did not remember hearing Belt make the threat, and Belt specifically denied

---

[3]The hearing officer set out his credibility determinations in significant detail.  *See* J.A. at 544-48 (October 14, 2003 Report of Hearing Officer Eric A. Taylor).

[4]APL relies heavily on one case where we did overturn a credibility determination by an Administrative Law Judge ("ALJ"), *Krispy Kreme Doughnut Corp. v. NLRB*, 732 F.2d 1288 (6th Cir. 1984).  However, the facts of this case were highly unusual.  The ALJ had credited the testimony of an employee who conceded making a false statement under oath in his earlier affidavit "due to his not wanting to admit what he had told [another employee] to the NLRB investigator" and expected to become shop steward if the union won the election, despite the contrary testimony of five other witnesses.  *Id*. at 1290-91.  Moreover, the court found no basis in the record for many of the reasons the ALJ relied on in discrediting those five witnesses.  *Id*. at 1292.  Finding that the ALJ's credibility determinations were "simply contrary to good sense," the court overturned the Board's decision to accept the ALJ's determinations.  *Id*. at 1293.  There is no evidence in the record suggesting that the present case involves a similar situation.

7

having made it. Alleged inconsistencies between Belt's and Gehm's testimony regarding where Gehm was standing during the visit, where Mr. Scott was standing during the visit, whether Belt made any statement as Belt and Gehm were leaving, and whether Mrs. Scott was standing outside or not are insufficient to require the hearing officer to discredit either Belt's or Gehm's testimony. Moreover, Mr. Scott's attendance problems (putting him in serious danger of being fired under the company's points system) cast doubt on his testimony. Together with the hearing officer's observation of the demeanor of the various witnesses, there was clearly substantial evidence for the hearing officer's finding that Belt did not threaten Mr. Scott.

As to the alleged threat by Gehm against Akridge, Gehm testified that she called simply because Akridge had asked her to remind him to come in and vote. She also stated that although she said, "If you don't get your butt in here and vote, I'm going to have to hurt you," she followed this with "I love you" and "was laughing all the way through the [message]." J.A. at 243 (Gehm Test.). Gehm also testified that Akridge was "like [an] older brother to [her]," and that they laughed and joked around regularly. J.A. at 243 (Gehm Test.). Together with the hearing officer's observation of the demeanor of the various witnesses, there was clearly substantial evidence for the hearing officer's finding that whatever Gehm said could not reasonably have been interpreted as a threat against Akridge.

In regard to the alleged threat by Belt against Esterday, the Union presented documentary evidence that Belt was traveling on a specific date that Esterday insisted Belt had visited her home. Together with the hearing officer's observation of the demeanor of the various witnesses, there was clearly substantial evidence for the hearing officer's decision to believe Belt's assertion that she did not threaten Esterday, rather than Esterday's claim to the contrary.

8

### 3. Cumulative Error

Finally, APL's cumulative-error argument is without merit. Other than the conceded late opening of the polls, the only alleged misconduct that the Board found to have taken place was the placement of a sticker stating "Vote No! I enjoy working for Communist scum," on the rear window of an employee's truck. J.A. at 42 (Sept. 15, 2003 Report of NLRB Acting Regional Director Earl L. Ledford). No evidence was introduced suggesting that the Union or its agent placed the sticker on the truck, that the Union was aware the sticker was placed on the truck, or that the sticker was discussed or seen by other employees. The Board adopted the Acting Regional Director's finding that this apparent third-party conduct did not require that the election be invalidated. The combination of this conduct with the late opening of the polls should not require a different result.

### III. CONCLUSION

We **ENFORCE** the Board's order.