# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 15, 2016          Decided May 17, 2016

No. 14-1284

DURHAM SCHOOL SERVICES, LP,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with 15-1017

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

*Amanda A. Sonneborn* argued the cause for petitioner. With her on the briefs were *Charles P. Roberts III* and *Brian M. Stolzenbach*.

*Micah P.S. Jost*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Richard F. Griffin*, *Jr.*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Julie B. Broido*, Supervisory Attorney.

Before: BROWN and SRINIVASAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: In 2013, in an election conducted by the National Labor Relations Board ("Board" or "NLRB"), the International Brotherhood of Teamsters, Local 991 ("Union") prevailed in its campaign to represent school bus drivers and monitors working for Petitioner Durham School Services, LP, in Milton, Pace, and Navarre, Florida. Petitioner challenged the election, claiming that the Union had circulated misleading propaganda during the election campaign, and that a Board Agent had engaged in inappropriate conduct during the election. After considering Petitioner's proffered evidence and claims, the Board's Regional Director recommended overruling Petitioner's objections without a hearing. The Board adopted the Regional Director's findings and recommendations, and certified the Union as the employees' lawful bargaining agent. *Durham Sch. Servs., LP*, 360 N.L.R.B. No. 108 (May 9, 2014), *reconsideration denied*, 361 N.L.R.B. No. 66 (Oct. 20, 2014).

Petitioner refused to bargain, which caused the Union to file unfair labor practice charges with the NLRB. The Regional Director then issued a complaint alleging that Petitioner had violated Section 8(a)(5) and (1) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(5), (1), by refusing to recognize and bargain with the Union following Board certification. On December 4, 2014, after the case had been transferred to the NLRB, the Board granted a Motion for Summary Judgment filed by the Board's General Counsel. The Board held that Petitioner had violated the Act as charged, and ordered it "to cease and desist, to recognize and

bargain on request with the Union and, if an understanding is reached, to embody the understanding in a signed agreement." *Durham Sch. Servs., L.P.*, 361 N.L.R.B. No. 121, at 2 (Dec. 4, 2014). Petitioner now petitions for review, and the Board has filed a cross-application for enforcement of its decision and order.

Petitioner raises three principal grounds in support of its claim that the Board erred in dismissing its objections to the election. First, Petitioner contends that the Union impermissibly deceived voters by distributing a campaign flyer that contained pictures of eligible voters and statements misrepresenting their intent to vote for the Union. Second, Petitioner asserts that the Board Agent handling the election compromised the integrity of the election in various ways when, *inter alia*, she carried the election booth and the ballot box to Petitioner's parking lot to permit a disabled employee to cast a ballot. Finally, for each claim, Petitioner maintains that its proffered evidence, even if insufficient in itself to overturn the election, was sufficient to warrant an evidentiary hearing. We find no merit in these claims.

The Board disposed of the first claim pursuant to *Midland National Life Insurance Co.*, 263 N.L.R.B. 127 (1982). Under *Midland*, the Board "will not probe into the truth or falsity of the parties' campaign statements and will not set aside an election on the basis of misleading statements unless 'a party has used forged documents which render the voters unable to recognize propaganda for what it is.'" *Durham*, 360 N.L.R.B. No. 108, at 1 (quoting *Midland*, 263 N.L.R.B. at 133). The Board dismissed the second claim because there was nothing to indicate that "the manner in which the election was conducted raise[d] a reasonable doubt as to the fairness and validity of the election." *Id.* at 3 (quoting *Polymers, Inc.*, 174 N.L.R.B. 282, 282 (1969),

*enforced*, 414 F.2d 999 (2d Cir. 1969)). Finally, the Board held that Petitioner was not entitled to a hearing on its objections because it failed to proffer evidence raising any substantial and material factual issues.

The Board's findings are supported by substantial evidence, and its conclusions are consistent with established precedent. Therefore, because the Board's Decisions and Orders are neither arbitrary, capricious, an abuse of discretion, nor otherwise not in accordance with law, 5 U.S.C. § 706(2)(A), we deny the petition for review and grant the Board's cross-application for enforcement.

## I. BACKGROUND

Petitioner employs full-time and regular part-time school bus drivers and monitors at its Milton, Pace, and Navarre, Florida facilities. On January 10, 2013, the Union filed an election petition with the NLRB to represent these employees. Pursuant to a Stipulated Election Agreement, Petitioner and the Union waived their rights to a pre-election hearing and agreed to a secret-ballot election to be conducted by the Board's Regional Director for Region 15 pursuant to the Board's regulations then in effect. The applicable regulations, which were codified in 29 C.F.R. pt. 102, were subsequently amended effective April 14, 2015. *See* Representation—Case Procedures, 79 Fed. Reg. 74,308 (Dec. 15, 2014). All regulations referenced below refer to the version of the Board's regulations that were in effect at the time when the events at issue took place.

The election took place on February 22, 2013. The Union prevailed by a wide margin: 112 to 74. Pursuant to 29 C.F.R. § 102.69(a), Petitioner timely filed objections with the Regional Director challenging the election, and proffered

evidence in support of the objections. The first two objections were, in relevant part, as follows:

> **First Objection.** Prior to the election, . . . [the Union] engaged in a deliberate attempt to deceive eligible voters by distributing a flyer shortly before the election that contained pictures of eligible voters and language misrepresenting that the pictured employees . . . intended to vote in favor of the Union. . . .

> **Second Objection.** During the election, the [Board Agent] . . . at the Pace [location] engaged in . . . conduct that destroyed confidence in the Board's election processes and impugned the Board's election standards[.] . . .

Petitioner's Objections at 1-2, Joint Appendix ("J.A.") 16-17. Petitioner also challenged the authority of the Regional Director to conduct a representation election at a time when the Board did not have a quorum. Petitioner now concedes that, in light of the court's decision in *UC Health v. NLRB*, 803 F.3d 669 (D.C. Cir. 2015), this third objection has no merit.

In support of its first objection, Petitioner submitted the Union flyer and two affidavits. The flyer's first page stated: "On February 22, 2013 WE'RE VOTING YES for Teamsters Local Union 991! And Here's Why……" The second page listed the date, time, and locations of the election, and some pro-union quotations attributed to the "Santa Rosa County Durham Teamsters Organizing Committee." The remaining pages of the flyer included the names and photographs of various employees alongside a quotation that said "We are voting 'Teamster's YES!' for a better future at Durham!"

The first affidavit was executed by employee April Perez, who declared that, a week before the election, a Union representative asked her to sign a document and to allow him to take her picture. Perez acknowledged that she gave the representative permission to take her photograph and signed the document without reading it. Perez's affidavit also says that the Union never told her that her picture would be used in its propaganda, and that she never authorized any quotations to be attributed to her. The second affidavit, executed by employee Heidi Gourley, simply stated that various employees had seen and discussed the Union flyer.

In support of its second objection, Petitioner submitted two affidavits. The first affidavit was executed by employee Barbara Nelson, who had served as Petitioner's election observer at the Pace, Florida, location. Nelson declared that, during the election, an employee who was not on the voter eligibility list was in the parking lot and wanted to vote, but was physically unable to get to the voting area. In order to accommodate the disabled employee, Nelson and the Board Agent carried the unsealed ballot box and voting booth outside to the parking lot. Nelson believed that if the Board Agent had noticed anyone entering the voting area when they were in the parking lot, the Agent would have asked the prospective voter to wait. Because it was raining, Nelson left the Board Agent for 30 seconds to get her umbrella; she could not see the ballot box when she did this. As it turned out, Nelson and the Board Agent were in the parking lot for only about 2 to 3 minutes. When they were returning to the polling area, the Board Agent realized that she had forgotten to put the disabled employee's ballot in an envelope reserved for challenged ballots. The Board Agent telephoned her supervisor to explain what had happened, and she talked on the telephone with her supervisor and another Board representative for about 20 minutes. During this time, eligible

voters continued to cast their ballots. The second affidavit, executed by employee Cal Schmidt, simply stated that the Board Agent acknowledged that she had failed to put the disabled employee's ballot in an envelope reserved for challenged ballots.

In light of the foregoing objections and supporting evidence, Petitioner asked that the election be set aside and that a second election be directed. Petitioner also requested that, if necessary, a full hearing on its objections be conducted on the record before a Hearing Officer pursuant to 29 C.F.R. § 102.69(e).

### A.  The Representation Proceeding

In response to Petitioner's objections, the Regional Director initiated an investigation pursuant to 29 C.F.R. § 102.69(c)(1). The Regional Director received a position statement and supporting documents from the Union. These documents purported to show that April Perez backed the Union and that she had given the Union permission to use her name and picture in its propaganda.

On March 25, 2013, the Regional Director issued a Report and Recommendation, recommending that Petitioner's objections be dismissed and that a Certification of Representative be issued to the Union. With respect to Petitioner's first objection, the Regional Director concluded that the Union's flyer did not violate the standard set forth in *Midland*, 263 N.L.R.B. 127. With respect to the second objection, the Regional Director found, *inter alia*, that Petitioner had provided no evidence that the security of the ballot box or the voting area had been compromised or that the Board Agent's phone call had adversely affected the election; that Petitioner had not alleged that any unauthorized

ballots were cast; and that Petitioner was estopped from relying on Nelson's voluntary decision to leave her station at the ballot box for 30 seconds to get an umbrella. The Regional Director also found that, although one ballot had been inadvertently mishandled, this could not have tainted the election process because the Union won by 38 votes.

Petitioner filed timely exceptions with the Board pursuant to 29 C.F.R. § 102.69(c)(2), challenging the Regional Director's Report and Recommendation. Petitioner asserted that the Regional Director had impermissibly relied on the documentation provided by the Union. Petitioner additionally claimed that the Regional Director had erred in concluding that the Union had not misrepresented Perez's views, used her photograph without permission, or compromised the rights of employees to cast a secret ballot. Petitioner also contended that the Regional Director had impermissibly applied the law to the facts. Finally, in a separate motion, Petitioner requested that the Board reopen the record for Petitioner to submit a supplemental affidavit executed by Perez. In that affidavit, Perez declared that she never executed any documents indicating that she supported the Union, and that she feared that her signature may have been forged on the documents proffered by the Union.

On May 9, 2014, the Board dismissed Petitioner's objections, denied the motion to reopen the record, and issued the Union a Certification of Representative. *Durham*, 360 N.L.R.B. No. 108. In its decision, the Board noted that the Union's documentation appeared to show that Perez was in fact a Union supporter. *Id.* at 2. However, the Board held that, "even assuming, as the Employer claims, that Perez did not in fact support the Union and did not write [that she supported the Union], we would still affirm the Regional Director's decision to overrule Objection 1 without a hearing, under the

*Midland* standard." *Id.* The Board further held that no employee right to cast a secret ballot had been compromised because all of the employees' actual votes had remained secret. *See id.* at 2-3 (citing *Somerset Valley Rehab. & Nursing Ctr.*, 357 N.L.R.B. 736, 737 n.5 (2011)). Finally, with regard to the second objection, the Board held that, contrary to Petitioner's claim, "the Regional Director actually applied th[e] correct standard in her thorough analysis of the Employer's evidence [regarding the Board Agent's conduct], and [agreed] with her conclusion that no hearing was necessary." *Id.* at 3. The Board therefore dismissed Petitioner's objections without a hearing.

## B.   The Unfair Labor Practice Proceeding

Following its certification, the Union requested that Petitioner schedule a meeting to begin negotiating a collective bargaining agreement. Petitioner refused to bargain with the Union in order to elicit an unfair labor practice charge and thereby obtain judicial review. *See Boire v. Greyhound Corp.*, 376 U.S. 473, 476-77 (1964) (explaining that, in the normal course, Board certification orders are not directly reviewable in the courts). As anticipated, the Union filed unfair labor practice charges with the NLRB, and the Regional Director issued a Complaint and Notice of Hearing. Subsequently, the Board's General Counsel moved to transfer and continue the proceeding before the Board and moved for summary judgment. The Board transferred the proceeding and ordered Petitioner to show cause why summary judgment should not be granted. Petitioner acknowledged that it had refused to bargain with the Union, but contended that the Union had been improperly certified.

On December 4, 2014, the Board issued a Decision and Order finding that Petitioner had unlawfully refused to

bargain with the Union in violation of Section 8(a)(5) and (1) of the Act, 29 U.S.C. § 158(a)(5), (1), and ordering Petitioner to bargain upon the Union's request. *Durham*, 361 N.L.R.B. No. 121. Petitioner filed a timely petition for review, arguing that the Board, in certifying the Union, had erred in declining to grant Petitioner an evidentiary hearing on its objections and in refusing to reopen the record. The Board cross-applied for enforcement.

## II. ANALYSIS

The Board's position in this case is quite straightforward and compelling: "With regard to both [of Petitioner's] objections . . . the Board properly assumed the truth of all [of Petitioner's] relevant evidence, but found it wanting under its well-established law. Because the specific evidence [Petitioner] proffered falls far short of establishing a prima facie case of conduct that would warrant setting aside the election, [Petitioner] was not entitled to an evidentiary hearing and [the] Board acted within its discretion in declining to conduct one." Br. for Respondent at 11-12. We agree.

Congress has vested the Board with the "responsibility to supervise representation elections." *Serv. Corp. Int'l v. NLRB*, 495 F.3d 681, 684 (D.C. Cir. 2007); *see also* 29 U.S.C. § 159(c). For this reason, Board decisions regarding representation elections are "entitled to 'a wide degree of discretion.'" *Serv. Corp.*, 495 F.3d at 684 (quoting *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330 (1946)). In reviewing the validity of election results, we ask whether the Board "has followed appropriate and fair procedures, and has reached a rational conclusion" in addressing any objections to the election. *Id.* (citation and ellipsis omitted). "We will uphold the Board's decision unless 'upon reviewing the record as a

whole, we conclude that the Board's findings are not supported by "substantial evidence," 29 U.S.C. § 160(e), (f),' or that its interpretation of the Act is not 'reasonable and consistent with applicable precedent.'" *Id.* (citations omitted).

Objecting parties do not have an automatic "right to a post-election hearing." *Amalgamated Clothing Workers of Am. v. NLRB*, 424 F.2d 818, 828 (D.C. Cir. 1970). Rather, to receive a hearing, "[t]he burden is on the objecting party to present evidence that raises substantial and material factual issues." *Park Chevrolet-Geo, Inc.*, 308 N.L.R.B. 1010, 1010 n.1 (1992); *see also* 29 C.F.R. § 102.69(d). In each case, "[w]hether [an objecting party's] evidence was sufficient depends upon the Board's 'substantive criteria'" for the relevant claim of election misconduct. *AOTOP, LLC v. NLRB*, 331 F.3d 100, 103 (D.C. Cir. 2003) (quoting *Swing Staging, Inc. v. NLRB*, 994 F.2d 859, 862 (D.C. Cir. 1993)). Thus, as the Board appropriately notes:

> When [a] party's evidence, even if credited, would not justify setting aside the election under those criteria as a matter of law, there is simply "nothing to hear," and the Regional Director may resolve the objections on the basis of an administrative investigation.

Br. for Respondent at 16 (quoting *Amalgamated*, 424 F.2d at 829). That is the sum and substance of this case.

### A. Petitioner's First Objection

Before the Board, Petitioner claimed that "the Union deceived voters by distributing a campaign flyer that contained pictures of eligible voters and statements misrepresenting their intent to vote for the Union." *Durham*, 360 N.L.R.B. No. 108, at 1. The Board agreed with the

Regional Director that Petitioner's evidence did not raise any substantial and material factual issues under *Midland*. *Id.*

As noted above, the Board in *Midland* set forth the standard governing objections to campaign propaganda:

> [W]e rule today that we will no longer probe into the truth or falsity of the parties' campaign statements, and that we will not set elections aside on the basis of misleading campaign statements. We will, however, intervene in cases where a party has used forged documents which render the voters unable to recognize propaganda for what it is.

263 N.L.R.B. at 133 (footnote omitted). The Board held that *Midland* controlled here because

> [t]here is no claim (much less evidence) of forgery here. Nor is there any dispute that the Union's flyer was easily recognizable as campaign propaganda. At most, then, the Employer's evidence suggests a possible misrepresentation of an employee's sentiments which, under *Midland*, provides no basis for setting aside the election. Thus, there was no need for a hearing much less grounds to warrant setting aside the election, which we note the Union won by a considerable margin.

*Durham*, 360 N.L.R.B. No. 108, at 2. We have no grounds upon which to overturn the Board's decision on this point.

The *Midland* rule has been accepted by both this court and a number of our sister circuits. *See, e.g.*, *U-Haul Co. of Nev. Inc. v. NLRB*, 490 F.3d 957, 963 (D.C. Cir. 2007); *Durham*, 360 N.L.R.B. No. 108, at 1 n.2 (citing cases). And the Board has routinely applied *Midland* in situations similar

to the present case: that is, in situations in which unions allegedly have engaged in misrepresentation by distributing campaign flyers designed to suggest that specified employees supported the union. *See, e.g.*, *U-Haul*, 490 F.3d at 962-63; *NLRB v. Media Gen. Operations, Inc.*, 360 F.3d 434, 444 n.10 (4th Cir. 2004); *Somerset*, 357 N.L.R.B. at 736; *BFI Waste Servs.*, 343 N.L.R.B. 254, 254 n.2 (2004). In each case, the Board found that, under *Midland*, the contested election propaganda was not of the type sufficient to set aside the election.

Petitioner does not contend that the Union's flyer was a forged document that was unrecognizable as propaganda. Rather, it appears that Petitioner simply seeks to avoid the *Midland* rule by minimizing the precedent. Petitioner first contends that the Regional Director improperly relied on evidence, uncovered during an *ex parte* investigation, that portrayed April Perez as a Union supporter. Petitioner thus argues that that Board erred in adopting the Regional Director's recommendation to dismiss its objections. The Board, however, made it clear that, "even assuming . . . that Perez did not in fact support the Union" and that the Union had misrepresented her views, Petitioner's objection did not meet the *Midland* standard. *Durham*, 360 N.L.R.B. No. 108, at 2.

Petitioner also asserts that *Midland* does not establish a hard-and-fast rule. In Petitioner's view, the applicability of *Midland* "all depends upon the circumstances." Br. of Petitioner at 22. In particular, Petitioner points out that evidentiary hearings have been granted in many cases involving *Midland*, hearings that, according to Petitioner, "would have been wholly unnecessary if the *Midland* rule were to be rigidly applied." *Id.* (citing cases). This argument claims too much. The Board does not contend that the

*Midland* rule automatically forecloses evidentiary hearings. Rather, the Board's position here is that Petitioner proffered no evidence raising substantial and material factual issues under *Midland*. The Board accepted all of Petitioner's factual assertions as true and concluded that there was nothing to indicate that the Union had used forged documents that rendered the voters unable to recognize propaganda for what it is. Thus, there was no reason for a hearing.

Petitioner further contends that *Midland* should not apply where a Union publicizes without permission how an employee intends to vote. Br. of Petitioner at 23-29. We need not address this issue, however, because Petitioner failed to raise it in the first instance with the Board. Petitioner did not mention this claim in its exceptions to the Board. Rather, in its exceptions to the Board, Petitioner focused on its claim that "the statutory rights of employees to cast a secret ballot were compromised" by the Union's misleading election campaign propaganda. Petitioner's Exceptions at 3, J.A. 88. And the Board addressed this issue in its response to Petitioner's exceptions:

> [O]ur [dissenting] colleague insists that *accurately* revealing an employee's expressed voting intentions, absent the employee's express consent, violates the principle of ballot secrecy. That claim is mistaken. If ballot secrecy were genuinely implicated, then even an employee's express consent to disclose her voting intentions would be insufficient to authorize publication of an employee's intended vote. More significantly, whatever an employee may tell a union about how she *intends* to vote, and however a union may publicize that disclosure, the fact remains that the employee's actual vote will *be* secret. *See Somerset Valley*, [357 N.L.R.B. at 737 n.5] (citing ballot secrecy in rejecting argument that

employees whose names and pictures appeared in flyer would feel compelled to support union). The Board has consistently focused on protecting ballot secrecy during the voting process. When the employee enters the voting booth, whether she votes against the union—either because she changed her mind or because she misled the union originally—or for the union, her vote is known only to her. There is no basis, then, for imposing precisely the sort of restriction on free campaign speech that the *Midland* Board rejected.

*Durham*, 360 N.L.R.B. No. 108, at 2-3 (footnotes omitted).

It is true that the Board member who dissented on the *Midland* issue argued that he "would hold that a party engages in objectionable conduct when it publicizes how specific, named employees intend to vote unless the party obtained express consent from those employees to disclose how they intended to vote." *Id.* at 4 (Miscimarra, Member, dissenting). This, however, was not the issue raised in Petitioner's exceptions to the Board. And, as the opinion for the majority points out, the position advanced by the dissenting Board member was inconsistent with Board precedent. *Id.* at 2 (majority opinion). This may explain why it was not the focus of Petitioner's exceptions. The main point here, however, is that because Petitioner failed to raise the issue with the Board in the first instance, the claim has been forfeited. *See* 29 U.S.C. § 160(e); *U-Haul*, 490 F.3d at 963; *Parsippany Hotel Mgmt. Co. v. NLRB*, 99 F.3d 413, 417 (D.C. Cir. 1996); *Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO v. NLRB*, 418 F.2d 1191, 1195 n.10 (D.C. Cir. 1969).

Finally, Petitioner argues that the Board erred in denying its request to reopen the record to consider Perez's supplemental affidavit. According to Petitioner, the proffered

affidavit was necessary to respond to the evidence, uncovered by the Regional Director during an *ex parte* investigation, supporting the Union's claim that April Perez was a Union supporter. Br. of Petitioner at 29-31. As explained above, however, the Board's decision in this case did not rely on this evidence. Therefore, there was no need for the Board to reopen the record.

Furthermore, Perez's supplemental affidavit lends nothing of substance to Petitioner's position. In her affidavit, Perez merely asserts that her signature may have been forged by the Union. The affidavit does not assert that the Union's campaign flyer was somehow a "forgery" under *Midland* rendering voters unable to recognize the flyer as campaign propaganda. *See U-Haul*, 490 F.3d at 963 (affirming the Board's determination that "allegedly forged signatures, which suggested more employees supported the Union than may have been the case, would not have prevented employees from recognizing that the Union was circulating the petition to garner support for its cause").

## B. Petitioner's Second Objection

Petitioner's second objection borders on frivolous. Petitioner contends "that the Board agent handling the election compromised the integrity of the election in various ways when the agent carried the election booth and the ballot box to the Employer's parking lot in order to permit a disabled employee to cast a ballot." *Durham*, 360 N.L.R.B. No. 108, at 3. Given the record in this case, it is clear that the Board did not err in concluding that the manner in which the election was conducted raised no reasonable doubts as to the fairness and validity of the election, and in holding that no hearing was necessary.

The Regional Director found that Petitioner did not allege that any unauthorized ballots were cast. Nor was there evidence that the Board Agent's conduct in any way affected the election's outcome. Petitioner does not dispute these findings. Rather, Petitioner argues that its objection and supporting evidence, even if not sufficient to overturn the election outright, were enough to warrant an evidentiary hearing. Petitioner is mistaken. As noted above, to merit an evidentiary hearing, an objecting party must "raise[] substantial and material issues of fact sufficient to support a *prima facie* showing of objectionable conduct." *Swing Staging*, 994 F.2d at 862 (emphasis added). Whether such a showing has been made depends on the same "substantive criteria" that govern the Board's ultimate determination. *AOTOP*, 331 F.3d at 103 (quoting *Swing Staging*, 994 F.2d at 862). When the conduct of a Board Agent is at issue, one substantive criterion is that "mere speculative harm [is insufficient] to overturn an election." *Fresenius USA Mfg.*, 352 N.L.R.B. 679, 680 (2008) (citation omitted).

The case law is clear that Petitioner must rely on its proffered evidence to support a request for an evidentiary hearing. And only if *that evidence* raises issues of fact sufficient to support Petitioner's *prima facie* case is a hearing then warranted to address issues concerning the fairness and validity of the election. *See, e.g.*, *N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1077 (D.C. Cir. 2007); *Majestic Star Casino, LLC v. NLRB*, 373 F.3d 1345, 1347-50 (D.C. Cir. 2004); *AOTOP*, 331 F.3d at 102-05.

Petitioner responds that requiring a party to be precise in its objections and evidence would effectively place the burden on that party to prove its case without a hearing. This is a specious claim that misapprehends the requirements of the law. An objecting party is not entitled to a hearing merely by

imagining fanciful acts of misconduct that find no support in the evidence. Rather, an objecting party must offer concrete evidence that is sufficient to give reasonable cause for concern and thus justify a hearing. *See, e.g.*, *NLRB v. J-Wood/A Tappan Div.*, 720 F.2d 309, 311-14 (3d Cir. 1983) (remanding for a hearing where, although not yet proven, the employer's evidence demonstrated that a "union agent" might have threatened employees' jobs prior to an election). In this case, Petitioner points to nothing in the record to support a claim that the Board Agent engaged in any conduct that might have tainted the election proceeding. Because Petitioner's proffered evidence raised no reasonable concerns regarding the propriety of the election, the Board did not err in denying the request for an evidentiary hearing.

### III. CONCLUSION

For the reasons set forth in the foregoing opinion, we deny Petitioner's petition for review, and we grant the Board's cross-application for enforcement.

*So ordered.*