# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 22, 2024        Decided February 18, 2025

No. 24-1079

JONES LANG LASALLE AMERICAS, INC,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

INTERNATIONAL UNION OF OPERATING ENGINEERS,
STATIONARY ENGINEERS, LOCAL 39, AFL-CIO,
INTERVENOR

Consolidated with 24-1098

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

*Reyburn W. Lominack, III* argued the cause for petitioner. With him on the briefs was *Todd A. Lyon.*

*David A. Seid*, Senior Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Jennifer A. Abruzzo*, General Counsel, *Ruth E. Burdick*, Deputy Associate General Counsel, *David Habenstreit*,

Assistant General Counsel, and *Meredith L. Jason*, Deputy Assistant General Counsel. *Milakshmi V. Rajapakse*, Attorney, entered an appearance.

*David A. Rosenfeld* and *Bruce A. Harland* were on the brief for intervenor International Union of Operating Engineers, Stationary Engineers, Local 39, AFL-CIO in support of respondent.

Before: SRINIVASAN, *Chief Judge*, WALKER, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: In 2023, the International Union of Operating Engineers, Stationary Engineers, Local 39, AFL-CIO ("Union") filed a petition with the National Labor Relations Board ("NLRB" or "Board"), seeking certification as the bargaining representative of the Maintenance II and III technicians employed by Petitioner Jones Lang LaSalle Americas, Inc. ("JLL" or "Company") at an Amazon, Inc., facility in Napa, California. The Union and JLL entered into a stipulated election agreement which was approved by the Board's Regional Director. The parties agreed that the election would be held on May 17, 2023, during two separate polling periods. The four eligible employees in the designated bargaining unit voted unanimously in favor of Union representation. However, JLL refused to bargain with the Union and filed an objection to the election.

In its objection to the election, JLL raised two claims regarding the conduct of the Board agent who was overseeing the election. First, JLL claimed that the Board Agent impermissibly left an unsealed ballot box and blank ballots in

the care of the parties' designated observers, when he briefly left the polling area to advise employees that they could vote. Second, JLL alleged that when the Board Agent told eligible voters that they could come to the polling place to vote, he impliedly suggested to the voters that they were compelled to cast a vote in the election.

After conducting an investigation, the Regional Director dismissed JLL's objections as meritless and certified the election. On March 21, 2024, a three-member panel of the Board unanimously issued a Decision and Order, granting summary judgment against JLL, finding that the Company had violated sections 8(a)(5) and (1) of the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C. § 158(a)(5), (1), by refusing to recognize and bargain with the Union. The Board concluded that all representation issues that JLL had raised in the unfair-labor-practice proceeding were, or could have been, litigated in the underlying representation proceeding, and that the Company did not offer any newly discovered or previously unavailable evidence, or allege any special circumstances that would require the Board to reexamine its decision in the earlier proceeding to certify the Union. Accordingly, the Board ordered JLL to recognize and bargain with the Union. Instead of doing so, JLL filed a petition for review with this court, reiterating its claim that the election should be set aside. The Board then cross-petitioned for enforcement of its order requiring JLL to bargain.

For the reasons that follow, we grant the Board's cross-application for enforcement of its order requiring JLL to recognize and bargain with the Union and deny JLL's petition for review.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

Section 7 of the NLRA provides that protected "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. In furtherance of these statutory objectives, the Act makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157," 29 U.S.C. § 158(a)(1), and "to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a)," 29 U.S.C. § 158(a)(5).

Under the Act, employees, a union, or an employer may petition the NLRB for a representation election to determine whether a union will serve as the agent for employees in collective bargaining with an employer. *Id.* § 159(c). If a polling place is designated for the election, an agent of the Board is sent to the polling place to supervise and monitor the election process. NLRB Casehandling Manual (Part Two) Representation Proceedings (hereinafter "NLRB Manual") § 11308. In addition, "[w]hen the election is conducted manually, any party may be represented by observers of its own selection, subject to such limitations as the [NLRB] Regional Director may prescribe." *Id.* § 102.69(a)(5). These designated observers, along with the Board Agent, help monitor the election. The parties' observers may also challenge ballots and voter eligibility. *Id.* § 102.69(a)(6).

Once ballots have been cast and the polls close, the ballot box should be sealed securely, in the presence of the observers, who ensure that no tampering occurs. NLRB Manual §§ 11318.4, 11332, 11340. The ballots are then tallied in the presence of the parties' representatives. *Id.* § 11340.2. Finally, the representatives sign the tally, certifying that the tabulation is correct. *Id.* § 11340.10.

The parties to a representation election may challenge how an election was conducted and/or the election results by filing objections and offers of proof with the Regional Director. 29 C.F.R. § 102.69(a)(8). Applicable procedural rules explain that:

> If timely objections are filed to the conduct of an election or to conduct affecting the results of the election, and the Regional Director determines that the evidence described in the accompanying offer of proof would not constitute grounds for setting aside the election if introduced at a hearing, and the Regional Director determines that any determinative challenges do not raise substantial and material factual issues, the Regional Director shall issue a decision disposing of the objections and determinative challenges, and a certification of the results of the election, including certification of representative where appropriate.

*Id.* § 102.69(c)(1)(i). Objectors may appeal decisions by the Regional Director to the Board. *Id.* §§ 102.69(c)(2), 102.67(c). The Board will grant a petition for review "only where compelling reasons exist therefor," and review, if granted, is limited to issues properly raised before the Regional Director. *Id.* § 102.67(d), (e).

Once the Regional Director or the Board certifies an election, employers are required to bargain with the employees' elected representative. *See* 29 U.S.C. § 158(a)(5). If an employer persists in refusing to bargain with a certified Union, a complaint may be issued by the Board's General Counsel, which in turn may result in an order from the Board finding that the employer has engaged in an unfair labor practice in violation of the NLRA. *See* 29 U.S.C. § 160(b); 29 C.F.R. § 102.15. Such orders are subject to enforcement in federal court. 29 U.S.C. § 160(e).

## B. *Factual Background*

Petitioner JLL provides building management services to third-party companies in facilities across the country. The events in this case involve the Union's attempt to secure collective bargaining rights on behalf of four employees at JLL's facility in Napa, California. As explained above, the Union requested an NLRB certification election. The Union and JLL reached a stipulated agreement regarding the terms of the election. The agreement was approved by the NLRB Regional Director. The election was set for May 17, 2023, and the parties agreed that it would take place during two polling periods, one from 3:30 pm to 4:00 pm, and the other from 6:45 pm to 7:15 pm.

On the day of the election, Board Agent Matt Peterson hosted a pre-election conference before the first polling period. Joining him were JLL's representative, Deven Villarin, and Union representative, Moses Portillo. JLL's designated observer, Diane Donohoe, was also present, as well as the Union observer for the first polling period, JLL employee Denis Vicenzini. The Union's observer for the second polling period was JLL employee Eric Buckley.

During the first polling period, Union observer Vincenzini cast his own ballot, then remained in the room along with JLL's observer Donahoe and the Board Agent. At around 3:45 pm, the Board Agent told the observers that he would step out briefly to check to see if the other employee whose shift had ended before the first polling period was nearby. He then left the polling area for approximately one minute, and returned with the second employee, Maynard Bumagat. Bumagat cast his ballot and left the polling area. During the one minute when the Board Agent stepped out, the ballot box and the unmarked ballots remained in the room, as did both observers. There is nothing in the record to indicate that the ballot box or the unmarked ballots were touched by either the JLL or the Union observer, or by anyone else, during the one minute when the Board Agent was out of the room.

During the second polling period, the Board Agent repeated what he had done during the first polling period. After the Union observer for the second period cast his ballot, the Board Agent again said that he would go check to see if the fourth eligible employee was nearby. He briefly stepped out, leaving the ballot box and unmarked ballots in the room with the JLL and Union observers. As before, the Board Agent returned shortly with the fourth employee, Roy Aninon, explaining that Aninon had been waiting outside under the mistaken impression that he had to be notified to come into the room to vote. Aninon, the fourth and final employee, cast his ballot and left. During the brief moments when the Board Agent stepped out, the ballot box and the unmarked ballots remained in the room, as did both observers. There is nothing in the record to indicate that the ballot box or the unmarked ballots were touched by either the JLL or the Union observer, or by anyone else, during the moments when the Board Agent was out of the room.

After polling closed, votes were tallied, showing that all four votes were cast for the Union. Both parties' representatives signed the tally, certifying that the counting and tabulating were fairly and accurately done, that the secrecy of the ballots was maintained, and that the results were as indicated.

### C. Procedural Background

JLL filed a timely objection to the election and an offer of proof on May 24, 2023. JLL's objection focused on the Board Agent leaving the polling area, which JLL contended was problematic in two respects: first, the Board Agent should not have left the ballots and ballot box in the room; and second, the Board Agent should not have stepped out to remind employees that the polls were open. According to JLL, such conduct was "sufficiently material" so as to constitute grounds for invalidating the election because, as relevant here, it "impinged on the voters' right not to cast a ballot" and because it "could be reasonably interpreted as impugning" election standards. JLL's Offer of Proof 4-5, Joint Appendix ("J.A.") 18-19 (citations omitted).

The Regional Director overruled JLL's objection without a hearing, finding that JLL failed to allege specific facts which, if credited, would prima facie warrant setting aside the election, and thus failed to raise material and substantial issues of fact sufficient to warrant a hearing. *See* 29 C.F.R. § 102.69(c)(1)(i). Distinguishing the cases relied upon by JLL in its offer of proof, the Regional Director explained that because the ballots were only left temporarily and in the care of the JLL and Union election observers, and because JLL did not offer anything to support any allegations that the election process had been compromised or that any eligible employee had been coerced into voting, it could not be shown that the Board Agent had

acted in a manner that would warrant overturning the election's results. JLL's objection was thus found to be insufficient to set aside the election. Accordingly, the Regional Director overruled JLL's objection and certified the election.

JLL appealed to the Board, contending that the Regional Director had erred in certifying the election. On September 7, 2023, a three-member panel of the Board summarily denied review, with one member noting separately that even if the "Board agent took an unnecessary risk" in leaving the unsealed ballot box in the room while he briefly stepped out, such conduct did not raise a reasonable doubt as to the election's fairness. Board Order of September 7, 2023 ("September Order"), J.A. 152 & n.1.

JLL continued to refuse to bargain with the Union, reiterating its certification objection in a letter sent to the Union on October 12, 2023. In response, the Board's General Counsel filed a complaint with the Board seeking summary judgment against JLL for its continued violations of the Act. In March 2024, the Board found no merit in JLL's attempt to relitigate certification issues, issued a summary judgment against JLL, and ordered the Company to bargain with the Union. JLL then filed this petition for review, and the Board cross-filed for enforcement of the March Order.

## II.     ANALYSIS

### A.  Standard of Review

The Supreme Court long ago recognized that, under the National Labor Relations Act, "Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees." *NLRB v.*

*A.J. Tower Co.*, 329 U.S. 324, 330 (1946). The Court has never wavered in this view of the Board's delegated authority under the NLRA. Given the Board's broad and undisputed "discretion to assess the propriety and results of representation elections," *Am. Bottling Co. v. NLRB*, 992 F.3d 1129, 1140 (D.C. Cir. 2021), this court has made it clear that it "will overturn a Board decision to certify an election in only the rarest of circumstances." *N. of Mkt. Senior Servs., Inc. v. NLRB*, 204 F.3d 1163, 1167 (D.C. Cir. 2000). These circumstances are limited to situations where the objector can show that "the alleged defects in election administration interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election." *RadNet Mgmt., Inc. v. NLRB*, 992 F.3d 1114, 1120 (D.C. Cir. 2021) (internal quotation marks and citation omitted).

We thus uphold a Board's judgment regarding a representation election unless "we conclude that the Board's findings are not supported by substantial evidence, or that the Board acted arbitrarily or otherwise erred in applying established law to the facts of the case." *Troutbrook Co. LLC v. NLRB*, 107 F.4th 994, 1000 (D.C. Cir. 2024) (citations omitted). As the Supreme Court noted in *Allentown Mack Sales & Serv., Inc. v. NLRB*, "[t]he substantial evidence test . . . requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree which *could* satisfy a reasonable factfinder." 522 U.S. 359, 377 (1998). In other words, "we reverse the Board only when the record is so compelling that no reasonable factfinder could fail to find to the contrary." *Troutbrook*, 107 F.4th at 1000 (internal quotation marks and citations omitted).

***B. The Regional Director's Decision to Certify the Election Without a Hearing Was Reasonable and Supported by the Record***

To receive a hearing on election objections, "the burden is on the objecting party to present evidence that raises substantial and material factual issues." *Durham Sch. Servs., LP v. NLRB*, 821 F.3d 52, 58 (D.C. Cir. 2016) (citations and brackets omitted). Therefore, "[w]hen a party's evidence, even if credited, would not justify setting aside the election . . . as a matter of law, there is simply 'nothing to hear,' and the Regional Director may resolve the objections on the basis of an administrative investigation." *Id.* (citation and bracket omitted).

Under Board precedent, objections grounded in the conduct of the Board Agent require that the objector demonstrate that such conduct "raised . . . reasonable doubts as to the fairness and validity of the election." *Id.* at 61; *see also Polymers, Inc.*, 174 N.L.R.B. 282, 282 (1969), *enforced* 414 F.2d 999 (2d Cir. 1969), *cert. denied*, 396 U.S. 1010 (1970) (describing the same standard). As we have explained, "mere speculative harm is insufficient." *Durham*, 821 F.3d at 61 (cleaned up). Even for allegations that the Board Agent did not "maintain an appearance of neutrality in conducting fair and impartial elections," the objector must still demonstrate that the conduct was serious enough to "destroy confidence" in the election process or "could reasonably be interpreted as impugning" election standards or the Board's neutrality. *N. of Mkt. Senior Servs.*, 204 F.3d at 1168.

On the record before us, it is clear that the Regional Director properly concluded that JLL's objection did not present "substantial and material factual issues" which, "if credited, would . . . justify setting aside the election" under the

applicable legal standard. *Durham*, 821 F.3d at 58. Accordingly, we find that the dismissal of JLL's objection without a hearing was reasonable and based on substantial evidence in the record, as was the Board's denial of JLL's petition for review.

First, the Regional Director reasonably concluded that the Board Agent's briefly leaving the ballot box in the room with the designated observers is not conduct that raises "reasonable doubts" about the election's validity. *Id.* at 61. As in *Durham*, JLL does not "allege that any unauthorized ballots were cast," or that "the Board Agent's conduct in any way affected the election's outcome." *Id.* Indeed, the evidence on the record is to the contrary: *The Company's* representative certified that the secrecy of the ballots was maintained and that all four votes were accurately tallied. Neither JLL's observers nor its representative objected to a single ballot. JLL's claims that an irregularity may have occurred is thus not only "mere[ly] speculative," but plainly contradicted by the facts. *Id.* Such a claim is "insufficient to overturn an election," *id.* (cleaned up), as Board precedent has held. *See Benavent & Fournier, Inc.*, 208 N.L.R.B. 636, 636, n.2 (1974) (overruling objection where "the ballots were in the custody of the observers during the short time" the Board Agent stepped out, and "[n]o one touched the ballots during that period" so "there could not have been any effect on the election").

Similarly, the Board Agent's conduct also did not "cast[] a doubt or cloud over the integrity of the ballot box." JLL's Offer of Proof 5 (quoting *Austill Waxed Paper Co.*, 169 N.L.R.B. 1109, 1109 (1968)), J.A. 19. As the Regional Director explained below, not every deviation from best practices warrants setting an election aside. Thus, although the NLRB Manual directs that unused ballots must remain in the "personal custody" of the Board Agent, NLRB Manual § 11322.1,

"neither the Casehandling Manual nor Board's Rules and Regulations addresses the specific situation here," as Member Kaplan observed below. September Order, J.A. 152 & n.1. And, in any event, the Manual is not binding, and the Board has found that "[p]urported noncompliance with those provisions [of the NLRB Manual] does not warrant setting aside an election, absent a showing that the deviations from the guidelines raised a reasonable doubt as to the fairness and validity of the election." *Patient Care of Pennsylvania*, 360 N.L.R.B. 637, 638 (2014).

Where, as here, the box "remained in the voting room under the 'watchful eyes' of both election observers," the conduct in question does not rise to the level justifying setting the election aside under Board precedent. *Sawyer Lumber Co., L.L.C.*, 326 N.L.R.B. 1331, 1332 (1998) (dismissing similar objection where it was clear that no extra ballots were cast, there was no evidence of election tampering, and both observers monitored the ballot box at all times). After all, the parties' designated observers are tasked with "represent[ing] their principals" in "generally monitoring the election process." NLRB Manual § 11310.3. *Compare Austill*, 169 N.L.R.B. at 1109-10 (setting election aside where ballot box was left wholly unattended), *with Anchor Coupling Co., Inc.*, 171 N.L.R.B. 1196, 1196 n.2 (1968) (distinguishing the facts in *Austill* where, as here, "the box was not left wholly unattended, and both of the Employer's observers certified that the ballot box was protected").

Second, the Regional Director reasonably concluded that the act of stepping out to check in on remaining voters did not rise to the kind of election irregularity that warrants invalidating an election. Instead, as the Regional Director concluded, JLL's allegations are purely conclusory: there is no evidence that the Board Agent stepped out with the intent to

solicit or compel votes. JLL only proffered that Board Agent Peterson stepped out briefly, and then returned each time with an employee who had yet to vote. Such evidence does not raise a "reasonable possibility," based on more than "mere speculative harm," that any "irregularity inhered" in the conduct of the election. *Peoples Drug Stores, Inc.*, 202 N.L.R.B. 1145, 1145 (1973); *J.C. Brock Corp.*, 318 N.L.R.B. 403, 404 (1995) (internal quotation marks and citation omitted).

In sum, we find no merit to JLL's challenges to the Regional Director's decision to certify the election and the Board's decision sustaining the certification.

### C.  JLL Has Forfeited Its Belatedly Proffered Claim That the Board Should be Reversed Because It Applied Inconsistent Standards

Finally, we reject JLL's contention that the Regional Director adopted inconsistent legal standards in assessing its objection. This argument was raised for the first time in JLL's reply brief. We need not address the merits of JLL's position because the claim has been forfeited. It is well established that issues not raised until the reply brief are forfeited. *See Tramont Mfg., LLC v. NLRB*, 890 F.3d 1114, 1121 (D.C. Cir. 2018) (holding that because a party had failed to properly raise an argument in its opening brief it had forfeited any right to pursue the matter with the court); *New York Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) (finding that a party had "forfeited any right to challenge" an issue it had not raised in its opening brief before the court).

In the decision overruling JLL's objections and certifying the Union, the Regional Director said that:

The question which the Board must decide in each case in which there is a challenge to conduct of the election is whether the manner in which the election was conducted raises a reasonable doubt as to the fairness and validity of the election.

Regional Director's Decision 4, J.A. 40 (quoting *Polymers, Inc.*, 174 N.L.R.B. at 282).

This is the same standard that JLL argued was applicable in its opening brief to this court. *See* JLL Opening Br. 10 ("The Court should grant JLL's petition for review and deny the Board's cross-application for enforcement . . . because the Board agent's misconduct . . . raised a reasonable doubt as to the fairness and validity of the election."). Indeed, in the "Standard of Review" section of its brief to the court, JLL stated that:

Where a Board agent's conduct during an election is at issue, the question is whether "the manner in which the election was conducted raises a reasonable doubt as to the fairness and validity of the election."

*Id*. at 12 (quoting *Durham*, 821 F.3d at 54 (quoting *Polymers Inc.*, 174 N.L.R.B. at 282)).

JLL never suggested in its opening brief that the Regional Director's standard was in error or somehow at odds with a different standard applied by the Regional Director or the Board. In its reply brief, however, JLL argued for the first time to this court that the Regional Director and the Board applied inconsistent standards of review.

JLL's failure to argue in its opening brief that the Regional Director had impermissibly adopted inconsistent legal

standards in assessing its objection "deprived the [Board] of the opportunity to respond. To prevent this sort of sandbagging of appellees and respondents, we have generally held that issues not raised until the reply brief are [forfeited]." *Bd. of Regents of Univ. of Wash. v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996); *Dist. No. 1, Pac. Coast Dist., Marine Engineers' Beneficial Ass'n v. Mar. Admin.*, 215 F.3d 37, 43 (D.C. Cir. 2000) (similar); *Corson & Gruman Co. v. NLRB*, 899 F.2d 47, 50 n.4 (D.C. Cir. 1990) (similar). Apart from the problem of sandbagging other parties, we have also explained that issues not raised until the reply brief are forfeited because "[j]udges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005).

## III.   CONCLUSION

For the foregoing reasons, we deny JLL's petition for review and grant the Board's cross-petition for enforcement of its order.

*So ordered*.